FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Feb 06, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALFREDO CRUZ ESQUIVEL, as an individual; and DONALD DAVID WILLARD, as an individual,<br><br>        Plaintiffs,<br><br>        v.<br><br>THE UNITED STATES OF AMERICA, acting through its agent BUREAU OF LAND MANAGEMENT; ARMANDO FONSECA, an individual, in both his personal and representative capacities; and TOM DOE, a BUREAU OF LAND MANAGEMENT EMPLOYEE OR CONTRACTOR, in both his personal and representative capacities,<br><br>        Defendants. | No. 2:18-cv-00148-SAB<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** |

      The Court held a hearing in the above-captioned matter on January 8, 2020. During the hearing, the Court heard oral arguments in support of and in

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS ~ 1**

opposition to the Government's Motion to Dismiss for lack of subject-matter jurisdiction, ECF No. 31. The Government argues that this Court lacks subject-matter jurisdiction over Plaintiffs' Federal Tort Claims Act (FTCA) claims because they fall within the discretionary function exception to the FTCA's limited waiver of sovereign immunity. The Court took the matter under advisement. Having considered the parties' briefing, oral arguments, and the relevant caselaw, the Court finds that it lacks subject-matter jurisdiction over Plaintiffs' FTCA claims and accordingly **grants** the Government's motion to dismiss those claims.

## FACTS

This case arises from the decisions Defendants allegedly made in fighting the North Star Fire in August 2015. The North Star Fire began burning on August 13, 2015, and ultimately burned more than 217,000 acres on the Colville Indian Reservation, Colville National Forest, and Okanogan and Ferry counties. At the times relevant to the case at hand, the North Star Fire was under the jurisdiction of a Type 2 Incident Management Team ("IMT") convened by the U.S. Forest Service.

The IMT was governed by the United States Forest Service Manual (FSM). ECF No. 35 at ¶ 4. The FSM provides high-level policy considerations rather than formulaic rules to guide federal firefighting teams. *See* ECF No. 35-1. These considerations include firefighter safety, public safety, ecological impacts, resource allocation, and cost. *Id.* Specifically, the FSM "recognizes that the nature of the wildland fire environment is often dynamic, chaotic, and unpredictable. In such environments, reasonable discretion in decision-making may be required." ECF No. 35-1 at 19. In addition, the FSM notes that firefighters "must use their best judgment in applying the guidance contained in [the FSM] to real-life situations." ECF No. 35-1 at 14.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 2**

On or about August 22, 2015, the IMT dispatched a team of structure protection firefighters to Plaintiffs' property. The team was led by Thomas McKibbin, an experienced firefighter with the Bureau of Land Management (BLM). The team was instructed to assess the potential threat the North Star Fire posed to Plaintiffs' property and to take defensive measure to protect structures on the property. ECF No. 37 at ¶ 6. Mr. McKibbin determined that the wildfire—which had not yet reached the property—was burning a type of fuel conducive to high fire activity and that the weather conditions and topography of Plaintiffs' property further increased the risk of extreme fire activity. ECF No. 37 at ¶ 7. Mr. McKibbin concluded that the structures on Plaintiffs' property were at risk and initiated fire defensive measures. Mr. McKibbin directed the team to improve a dirt road on Plaintiffs' property into a fire break, and then instructed them to reinforce the break with a burnout.[1] *Id.* at ¶ 8.

As Mr. McKibbin and his team were preparing to protect Plaintiffs' property, Plaintiff Donald Willard approached the team and asked what they were doing on his property. ECF No. 31 at 8; ECF No. 41 at ¶¶ 3-6. Mr. McKibbin told Mr. Willard what defensive measures the crew was taking to protect Plaintiffs' property from the fire and reassured Mr. Willard that, despite his beliefs to the contrary, the crew's entire purpose was to protect private structures. ECF No. 33 at ¶ 74. However, Mr. Willard alleges that Mr. McKibbin specifically told him not to worry about his property because the team would spray "foam" around the area so that the burnout would not spread and that this promise convinced Mr.

---

[1] A "burnout" is a low-intensity intentional burn of combustible materials conducted under controlled conditions for the purpose of depriving an advancing fire of additional fuel by widening and reinforcing fire breaks. ECF No. 37 at 8. Plaintiffs characterize the fire as a "backburn", which is a more intense fire set to change the direction and force of an oncoming fire. ECF No. 44 at 5; ECF No. 33 at ¶¶ 73-75. However, the facts indicate that fire set by Defendants' team was, in fact, a burnout rather than a backburn and that Plaintiffs used the incorrect term to describe the fire.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 3**

Willard to allow the crew to work and to leave his property for the night. ECF No. 41 at ¶¶ 12-16. Mr. McKibbin insists that he made no such promises, particularly because foam would not be used in combination with a burnout. ECF No. 46 at ¶ 4. Mr. McKibbin and his team did not take any defensive measures until Mr. Willard consented to the burnout. *Id.* at ¶ 5. Mr. McKibbin and his crew worked throughout the day and into the night, secured the firebreak—ensuring that any residual fire was not a threat—and left to sleep, eat, and debrief with their commanders. *Id.* at ¶ 8.

The next morning, Mr. Willard alleges that he arrived at the property to find the team had left and immediately smelled propane coming from his motorhome. Mr. Willard says he did not secure the gas to his home before leaving the prior day because he thought the BLM crew would protect his home from the fire. ECF No. 41 at ¶¶ 23-27. While Mr. Willard repaired the leak, he heard fire crackling from up the hill, near where the BLM crew had been stationed the day before. Mr. Willard noticed that no members of the crew were monitoring the fire, no foam had been sprayed, and he could see no other precautions had been taken to prevent the fire. *Id.* at ¶¶ 34-35. Plaintiffs allege that Mr. Willard fought the fire on the property singlehandedly from 8 A.M. until 1:10 P.M., when Mr. McKibbin and his crew arrived. *Id.* at ¶¶ 39-41.

Shortly after arriving at the property, Defendants allege that Mr. Willard approached Mr. McKibbin. The nature of this conversation is disputed; Mr. Willard maintains that he was respectful, though frustrated and concerned, ECF No. 43 at ¶ 59, and Mr. McKibbin maintains that Mr. Willard was "aggressive" and acting in a "bizarre" manner. ECF No. 37 at ¶¶ 14-16. After relaying the incident to IMT Operations Chief Paul Delmerico, Mr. McKibbin and his crew were instructed to vacate Plaintiffs' property and were gone by 1:45 that afternoon. *Id.* at ¶¶ 17-21; ECF No. 43 at ¶ 50. Mr. Willard asserts that Mr. McKibbin left without answering his questions about why foam was not sprayed

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 4**

or why the burnout had been left unsupervised overnight. ECF No. 43 at ¶ 49. Plaintiffs allege that, had the Defendants been not intentionally misrepresented the protective measures the firefighting crew was going to take, Mr. Willard would have stayed on his property and would have taken more precautions to protect it. ECF No. 43 at ¶¶ 47-48. Defendants maintain that they did not misrepresent the protective measures they would take.

## PROCEDURAL HISTORY

On May 15, 2017, Plaintiffs filed an FTCA administrative claim with the BLM, seeking $5 million in damages. ECF No. 19-2 at 23. At the administrative level, Plaintiffs alleged that their damages resulted from BLM's negligent fighting of the North Star Fire. *Id.* On November 13, 2017, BLM denied Plaintiffs' claims on the basis that Plaintiffs failed to provide evidence of negligence by a BLM employee and failed to provide evidence supporting their damages claim. *Id.*

On May 11, 2018, Plaintiffs timely filed a Complaint in this Court, alleging claims under the FTCA and the Civil Rights Act of 1871 against Secretary of the Interior Ryan Zinke, BLM, BLM's Deputy Director of Policy and Programs Brian Steed, BLM's Acting Deputy Director of Operations Michael Nedd, and two BLM firefighters, Armando Fonseca and Tom Doe. ECF No. 1. The United States maintains that they do not know the identities of the two individual defendants.

In this Complaint, Plaintiffs raised seven discrete causes of action: (1) § 1983; (2) federal and state takings claims; (3) tortious interference with a business expectancy; (4) trespass/nuisance; (5) negligent firefighting; (6) injury to trees in violation of RCW 64.12.030; and (7) unlawful damage to property. On July 11, 2018, BLM and its known employees filed a Rule 12(b)(1) motion to dismiss Plaintiffs' takings and tortious interference claims for lack of jurisdiction under the FTCA; Plaintiffs conceded and voluntarily dismissed these claims. *See* ECF No. 11. On August 10, 2018, Secretary Zinke, Mr. Steed, and Mr. Need moved

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 5**

for dismissal based on immunity under the FTCA. ECF No. 9. Plaintiffs responded by requesting that Defendants stipulate to the filing of a First Amended Complaint that provided for the removal of Secretary Zinke, Mr. Steed, and Mr. Nedd, but preserved claims against the United States, Mr. Fonseca, and Mr. Doe. ECF Nos. 18, 19.

Plaintiffs filed their First Amended Complaint (FAC) on December 17, 2018, alleging the following claims: (1) § 1983 claims against Mr. Fonseca and Mr. Doe for violations of Plaintiffs' First, Fourth, Fifth, and Sixth Amendment rights; (2) *Bivens* claims alleging violations of Plaintiffs' Fifth Amendment substantive due process rights by Mr. Fonseca and Mr. Doe; (3) Trespass/nuisance claims against Defendants for setting the burnout, failing to supervise it, and allowing it to enter and damage Plaintiffs' property; (4) Negligence, negligent supervision, and negligent hiring; and (5) Damage to land and property in violation of Washington law. ECF No. 19 at 11-16.

Plaintiffs' FAC sought damages against all Defendants for property damage, personal injury, timber trespass, emotional distress, punitive damages, pre- and post-judgment interest, and reasonable costs and attorney's fees. *Id*. at 16. After receiving several extensions, Defendants filed the instant motion and request that the Court dismiss Plaintiffs' FTCA claims—the trespass/nuisance and negligence claims—for lack of subject-matter jurisdiction.

**RULE 12(b)(1) STANDARD**

A federal court must have subject-matter jurisdiction in order to hear a case. *Lightfoot v. Cendant Mortg. Corp.*, ___ U.S. ___, 137 S. Ct. 553, 560 (2017) (citing *Pennoyer v. Neff*, 95 U.S. 714, 733 (1877)). In the absence of jurisdiction, Federal Rule of Civil Procedure 12(b)(1) provides that a party may move for the dismissal of the case. There are two types of 12(b)(1) attacks: facial and factual. In a facial attack, the challenger asserts that the allegations in the complaint are, on their face, insufficient to invoke federal jurisdiction. *Safe Air for Everyone v.*

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 6**

*Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction by introducing affidavits or other evidence showing that the court lacks subject-matter jurisdiction. *Id.* Once the moving party has met its burden to convert the motion to dismiss into a factual attack, the party opposing the motion must furnish its own affidavits or evidence to satisfy its burden of establishing subject-matter jurisdiction. *Id*. In considering a factual motion, the court need not presume the truthfulness of the plaintiff's allegations, though it must resolve any factual disputes in the plaintiff's favor. *Edison v. United States*, 822 F.3d 510, 517 (9th Cir. 2016).

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009). However, a dismissal under 12(b)(1) is inappropriate if the motion is based on genuinely disputed facts and the jurisdictional and substantive issues are "so intertwined" that resolution of the jurisdictional question requires the court to reach the merits of the plaintiff's claims. *Safe Air*, 373 F.3d at 1039 (quoting *Sun Valley Gas, Inc. v. Ernst Enters.*, 711 F.2d 138, 139 (9th Cir. 1983)). If the jurisdictional motion involves issues that go to the merits of the claim, the court should instead apply a summary judgment standard and not reach the jurisdictional question until a substantive motion is filed or the case proceeds to trial. *Young v. United States*, 769 F.3d 1047, 1052 (9th Cir. 2014).

## SUBJECT-MATTER JURISDICTION UNDER THE FTCA

In general, the United States is immune from suit unless it has waived its sovereign immunity or otherwise consented to the suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). If sovereign immunity has not been waived, the court must dismiss the case for lack of subject-matter jurisdiction. *Id.* The FTCA waives the United States' sovereign immunity "under circumstances where the United States,

if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Thus, the United States and its agents can be held liable in tort if a private person would have been held liable for the relevant act or omission. *Jachetta v. United States*, 653 F.3d 898, 904 (9th Cir. 2011).

However, the FTCA's waiver of sovereign immunity is limited by a number of exceptions. Relevant here is the discretionary function exception (DFE). The DFE preserves the United States' sovereign immunity for "any claim…based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The DFE is designed to insulate government decisions from "judicial second-guessing" and shields the United States from liability for the actions of employees who acted according to their best judgment. *Gonzalez v. United States*, 814 F.3d 1022, 1027 (9th Cir. 2016). This rule applies even if the government employees acted negligently. *Kennewick Irr. Dist. v. United States*, 880 F.2d 1018, 1029 (9th Cir. 1989). The government bears the burden of showing whether the exception applies. *Kim v. United States*, 940 F.3d 484, 487 (9th Cir. 2019).

Courts apply a two-part test to determine whether the DFE applies. First, the court must decide whether the challenged action involves an element of judgment or choice. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The exception does not apply where a federal statute, policy, or regulation specifically prescribes a course of action for the challenged conduct. *Id.*; *see also United States v. Gaubert*, 499 U.S. 315, 324-25 (1991). Second, the court must determine whether the challenged action "is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 536. The action is of the kind that the exception was designed to shield if the conduct implements social,

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 8**

economic, or political policy considerations. *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000). When a statute or regulation allows a federal agent to act with discretion, there is a "strong presumption" that the authorized act is based on an underlying policy decision. *Id.* (citing *Gaubert*, 499 U.S. at 324). Furthermore, it is irrelevant whether the federal agent actually had policy considerations in mind when she made the decision; rather, what matters is that a policy analysis *could* have applied to the decision. *Gonzalez*, 814 F.3d at 1034.

Courts have had multiple opportunities to consider the applicability of the DFE to negligence claims stemming from decisions made by government actors while fighting wildfires. *See, e.g.*, *Whisnant v. United States*, 400 F.3d 1177, 1182 n.3 (9th Cir. 2005); *Miller v. United States*, 163 F.3d 591, 595 (9th Cir. 1998). For example, in *Miller*, plaintiff landowners sued the United States, alleging that the United States had negligently allowed fires on federal land to burn their property when BLM firefighters decided it would be too risky to fight the fires. *Miller*, 163 F.3d at 592. There, the Ninth Circuit held that its "task [was] not to determine whether the Forest Service made the correct decision in its allocation of resources" and found that the DFE applied to firefighters' decisions regarding how to fight a wildfire. *Miller*, 163 F.3d at 595. In reaching its conclusion, the court relied on language in the FSM that granted firefighters discretion to consider fire suppression costs, resource damage, environmental impacts, and the risk to private property in making firefighting decisions. *Id.* at 596. The Ninth Circuit therefore concluded there that the DFE applied and that the district court lacked jurisdiction over the plaintiffs' negligence claims. *Id.* at 597.

Also informative is *Green v. United States*, 630 F.3d 1245 (9th Cir. 2011). There, the plaintiffs sued alleging that the Forest Service was negligent for failing to notify them that a backburn was set near their properties while firefighters battled a wildfire in a national forest. *Id.* at 1247-48. The Ninth Circuit concluded

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 9**

that, although the choice to set the backburn was discretionary, the decision to set backburns without informing property owners of the burn or the risks involved with a backburn in particular was not subject to policy considerations. *Id.* at 1251-52. Thus, the Ninth Circuit concluded that the DFE did not apply, and the district court did have jurisdiction to hear the plaintiffs' negligence claims against the United States. *Id.* at 1252.

**DISCUSSION**

The United States argues that this Court lacks subject-matter jurisdiction over Plaintiffs' FTCA claims because the claims fall within the DFE to the FTCA's waiver of sovereign immunity. In response, Plaintiffs make three arguments: first, that the Court should not grant the motion because the jurisdictional and substantive issues are too closely intertwined and should be resolved either at trial or on a substantive motion; second, that Defendants lied to Mr. Willard about the precautions the firefighters would take to protect their property and that such a choice is neither discretionary nor grounded in public policy; and third, that *Miller* is inapplicable where the federal agents—primarily Mr. McKibbin and his crew—were negligent. For the reasons discussed herein, the Court concludes that decisions related to fighting the North Star Fire— including setting the burnout on Plaintiffs' property—fall within the DFE and therefore the Court lacks jurisdiction to consider Plaintiffs' FTCA claims.

1. <u>Whether the Jurisdictional and Substantive Issues are "Too Intertwined" to Resolve on a 12(b)(1) Motion</u>

The Court first considers Plaintiffs' argument that the Court should deny the motion to dismiss because the jurisdictional question is too intertwined with the substantive issue to decide on a motion to dismiss. Plaintiffs argue that the Court should deny the motion and wait to reach the jurisdictional determination until the Government brings a motion going to the merits or the matter goes to trial. ECF No. 44 at 13. In particular, Plaintiffs maintain that the Court cannot

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 10**

determine if the discretionary function applies unless it first decides whether Mr. McKibbin was negligent, whether Mr. McKibbin had policy-making authority, and whether the decision to set a burnout was a policy decision. ECF No. 44 at 13. However, Plaintiffs also conceded that "the facts in this matter establish that the DFE would likely apply to the BLM's decision to conduct a [burnout]" because the *Berkovitz* test is satisfied. *Id.* at 12.

Plaintiffs' arguments involve misstatements and misinterpretations of the relevant standards and, therefore, necessarily fail. The Court need not determine whether Mr. McKibbin—or any of the Defendants, for that matter—were negligent or were policymakers, or whether the decision to set the burnout was a policy decision. The determination of whether the government and its agents were negligent is irrelevant to analysis of whether the DFE applies. *Kennewick Irr. Dist.*, 880 F.2d at 1029; *Young*, 769 F.3d at 1052-53. The Court's inquiry here is focused on whether the judgment was one of judgment or choice, not whether that choice was proper. The Court need not make any factual determinations about whether any of the Defendants were negligent in order to determine whether it has jurisdiction over Plaintiffs' FTCA claims.

Furthermore, Plaintiffs are incorrect in their assertion that the DFE applies only if Mr. McKibbin had policy-making authority. This argument fails because the DFE considers "the nature of the conduct, rather than the status of the actor" in determining whether the exception applies. *Berkovitz*, 486 U.S. at 536. Plaintiffs' argument that the Court cannot reach the jurisdictional question until it determines whether the decision to set the burnout was a policy decision similarly fails. The Court must determine whether the decision made was within the scope of discretion afforded the government agent and whether the decision is one susceptible to policy analysis, not whether the government agent who made the decision has authority to set government policy. Plaintiffs have incorrectly conflated these two requirements.

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 11**

The Court may weigh the evidence before it and make factual determinations with regards to the applicability of the DFE in order to satisfy its own duty to ensure that it has power to hear this case. *See, e.g., Roberts v. Corrothers*, 812 F.2d 1173, 1177-78 (9th Cir. 1987); *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Accordingly, the Court will proceed to consider whether the DFE applies to Plaintiffs' FTCA claims and whether it is deprived of jurisdiction over those claims.

2. <u>The Discretionary Function Exception to the Federal Tort Claims Act</u>

The Government argues that the DFE applies to Plaintiffs' FTCA claims and the Court lacks jurisdiction over those claims. However, Plaintiffs do not seriously dispute that the DFE applies. To the contrary, Plaintiffs concede that "the facts in this matter establish that the DFE would likely apply" because the *Berkovitz* test is satisfied. ECF No. 44 at 12. Plaintiffs argue that the DFE should not apply because Plaintiffs were negligent in setting the burnout, lied to Plaintiffs to induce their consent to the burnout, and that the decision to abandon the burnout was not a permissible exercise of policy judgment. However, Plaintiffs' arguments that these allegations preclude application of the DFE are not correct statements of the law. For the reasons discussed herein, the Court finds that the DFE applies to Plaintiffs' FTCA claims and therefore the Court does not have jurisdiction over those claims.

    a. *Step 1: Whether the Challenged Conduct Involves an Element of Judgment or Choice*

The first step of the DFE inquiry requires the Government to determine whether the challenged conduct involves an element of judgment or choice. *Berkovitz*, 486 U.S. at 536. Here, Plaintiffs challenge the decisions made by Mr. McKibbin and his team in fighting the North Star Fire, including the decision to set a burnout on Plaintiffs' property. Defendants assert that Mr. McKibbin and his crew were given discretion to exercise their best judgment in choosing how to

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 12**

fight the fire and protect Plaintiffs' property by the United States Forest Service Manual (FSM). In particular, Defendants point to guidance in the FSM that allows firefighters to consider firefighter safety, public safety, ecological impacts, and cost when deciding how to fight a fire. ECF No. 35 at 25.

The Ninth Circuit has recognized that the FSM gives firefighters broad discretion to make decisions about how to fight wildfires and that the FSM outlines "broader goals sought to be achieved [that] necessarily involve an element of discretion." *Miller*, 163 F.3d at 595; *see also Woodward Stuckart, LLC v. United States*, 973 F. Supp. 2d 1210, 1220 (D. Or. 2013); *Kimball v. United States,* No. 1:12-cv-00108-EJL, 2014 WL 683702 (D. Idaho Feb. 20, 2014); *Juras v. United States,* No. 11-cv-0155-WPL, 2011 WL 13223900 (D. N.M. Oct. 14, 2011). Indeed, the FSM explicitly acknowledges that "employees must use their best judgment" and "reasonable discretion in decision-making" in applying the guidance in the FSM to real-life fires. ECF No. 35 at 19.

Here, Mr. McKibbin decided to set a burnout because—based on his experience and training—a burnout was the best way to reinforce the break protecting Plaintiffs' property from the approaching wildfire. ECF No. 37 at ¶¶ 7-8. This is exactly the sort of decision-making that involves an element of judgment or discretion for purposes of the DFE. *See Miller*, 163 F.3d at 595; *Green*, 630 F.3d at 1250-51. Plaintiffs do not earnestly dispute that this decision involved an element of discretion or judgment; rather, Plaintiffs assert that Defendants' alleged negligence does not involve an element of choice or discretion. *See* ECF No. 44 at 14, 16. However, negligence is irrelevant to this determination, as the DFE applies regardless of whether the government's discretion is abused. *See* 28 U.S.C. § 2680(a). Accordingly, the Court concludes that the first *Berkovitz* prong is satisfied.

//

//

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 13**

b. *Step 2: Whether the Challenged Conduct Implements Social, Economic, or Political Considerations*

The Court must next determine whether the challenged conduct implements policy considerations. The Court concludes that Defendants' decision to set a burnout is a protected policy consideration. The FSM directs firefighters to balance multiple considerations in deciding how to fight a wildfire, including firefighter safety, environmental impact, resource damage, and suppression costs. *See* ECF No. 35-1 at 25. Because the FSM explicitly provides firefighters discretion in choosing how to fight a fire, it is presumed that the decision to set a burnout here is susceptible to policy analysis. *Nurse*, 226 F.3d at 1001 (citing *Gaubert*, 499 U.S. at 324).

Plaintiffs make three arguments as to why the decision at issue here is not susceptible to policy analysis. None of these arguments convince the Court to conclude that the decision challenged here is not susceptible to policy analysis. First, Plaintiffs argue that Defendants' decisions are not susceptible to policy analysis because the decisions involved negligence or abuse of discretion. Plaintiffs' arguments must fail because the DFE applies regardless of negligence or abuse. *See Kennewick*, 880 F.2d at 1029. Defendants' decision to set a burnout on Plaintiffs' property is the sort of decision courts have repeatedly recognized as one susceptible to policy considerations. *See, e.g.*, *Whisnant*, 400 F.3d at 1182 n. 3.

Second, Plaintiffs argue that Defendants' reliance on *Miller* is misplaced because, according to Plaintiffs, *Miller* did not involve claims of negligence and is therefore not applicable. ECF No. 44 at 17-18. Plaintiffs are mistaken on this point. A review of the *Miller* opinion leads the Court to conclude that the underlying complaint in *Miller* was grounded in negligence. There, the Ninth Circuit cited the DFE as relevant exception to the FTCA's waiver of sovereign immunity, and the DFE largely applies to claims of negligence. *See Miller*, 163

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 14**

F.3d at 593 (citing 28 U.S.C. § 2680(a) ("any claim…based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty…")). This conclusion is bolstered by a review of the appellate briefing in the case, which explicitly shows that the plaintiffs in that case brought their claims under a negligence theory. *See* Brief for Appellants at 2, *Miller v. United States*, 163 F.3d 591 (9th Cir. 1998) (No. 97-35847); Brief for Appellee at 3, *Miller v. United States*, 163 F.3d 591 (9th Cir. 1998) (No. 97-35847). Accordingly, Plaintiffs cannot in good faith argue that *Miller* does not apply simply because the Ninth Circuit's opinion does not use the word "negligence."

Finally, Plaintiffs argue that Defendants' choice to set a burnout is not susceptible to policy analysis because there is no government policy that allows the government or its agents to lie. This argument is grounded in Plaintiffs' allegations that Mr. McKibbin lied to Mr. Willard about precautionary measures his team would take in conducting the burnout and that Mr. McKibbin lied to induce Mr. Willard's consent to the burnout. *See* ECF No. 44 at 14. Defendants strongly assert that Mr. McKibbin did not make any such promises, and that he had no incentive to lie to Plaintiffs. See ECF No. 46 at ¶ 5. Even assuming that Plaintiffs' allegations are true, intentional torts such as misrepresentation are an exception to the FTCA's waiver of sovereign immunity and, as such, the Court would not have jurisdiction over such a claim. *See* 28 U.S.C. § 2680(h); *Schinmann v. United States*, 618 F. Supp. 1030, 1034-37 (E.D. Wash. 1985) (misrepresentations are within § 2680(h) prohibition).

Accordingly, the Court concludes that Defendants' decision to set a burnout on Plaintiffs' property because it is susceptible to a balancing of a myriad of interests ranging from protecting private property to firefighter safety to cost suppression. Plaintiffs' attempts to distinguish this case from *Miller* and attempts to argue that the decision at issue here is not susceptible to policy analysis fail. As

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 15**

such, the decision to set a burnout here is the type of conduct that the DFE is designed to protect. *See Miller*, 163 F.3d at 596.

   3. <u>Jurisdictional Discovery</u>

Plaintiffs make a last-ditch effort to avoid dismissal of their FTCA claims by requesting that the Court allow them the opportunity to engage in jurisdictional discovery. ECF No. 44 at 20-21. Plaintiffs argue that Defendants alone were afforded the opportunity to engage in discovery on the issue of jurisdiction. Defendants object to this request.

Plaintiffs are not entitled to further jurisdictional discovery. Plaintiffs were given the same opportunity to engage in jurisdictional discovery as were Defendants. *See* ECF No. 26 (limiting discovery by both parties to jurisdictional issues). The fact that Plaintiffs failed to engage in jurisdictional discovery pursuant to this Order while Defendants took full advantage of this opportunity to investigate whether the Court had jurisdiction is not grounds to grant Plaintiffs leave to conduct further discovery. This is particularly true where Plaintiffs bore the burden of proving that jurisdiction existed in the first place. *See, e.g.*, *Gager v. United States*, 149 F.3d 918, 922 (9th Cir. 1998). Furthermore, Plaintiffs are not entitled to additional jurisdictional discovery where it is unlikely that discovery will produce facts sufficient to survive a 12(b)(1) motion. *Gonzalez*, 814 F.3d at 1031. As discussed above, it is unlikely that any facts exist that would make the DFE inapplicable to Plaintiffs' claims. Thus, Plaintiffs' request for additional discovery is denied.

## CONCLUSION

The Court concludes that it lacks jurisdiction over Plaintiffs' FTCA claims because the claims fall within the discretionary function exception to the FTCA's waiver of sovereign immunity. First, the decision to set a burnout here was one grounded in discretion or judgment. Defendants were granted authority to exercise their discretion in choosing how to fight wildfires. Second, the decision

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS * 16**

to set a burnout was susceptible to policy analysis because Defendants balanced competing interests in deciding to set the burnout. Accordingly, because the discretionary function exception applies, the Court lacks subject-matter jurisdiction and dismisses Plaintiffs' FTCA claims.

Accordingly, **IT IS HEREBY ORDERED:**

1. The Government's 12(b)(1) Motion to Dismiss for Lack of Jurisdiction under the Discretionary Function Exception to the FTCA, ECF No. 31, is **GRANTED**.

2. The following of Plaintiffs' claims are **dismissed with prejudice**:

    (a) Trespass/nuisance; and

    (b) Negligence/Negligent Supervision/Negligent Hiring.

**IT IS SO ORDERED**. The District Court Clerk is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 6th day of February 2020.



                Stanley A. Bastian
              United States District Judge

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS \* 17**